IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01913-CNS-NRN

PERSONALIS, INC.,

Plaintiff,

v.

FORESIGHT DIAGNOSTICS INC.,

Defendant.

---

# ORDER ON
# DEFENDANT FORESIGHT DIAGNOSTIC INC.'S
# MOTION TO STAY PENDING *INTER PARTES* REVIEW

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court on Defendant Foresight Diagnostics, Inc.'s ("Foresight") Motion to Stay Pending *Inter Partes* Review. (Dkt. #36.) Judge Charlotte N. Sweeney referred the motion to stay to me. (Dkt. #37.) Plaintiff Personalis, Inc. ("Personalis") filed its opposition. (Dkt. #38.) Foresight filed its reply in support of the stay. (Dkt. #44.) I heard argument by the Parties on January 5, 2023. (Dkt. #53.)

The motion to stay pending *inter partes* review will be **GRANTED**.

**Background.**

This is a patent infringement lawsuit brought by Personalis against Foresight. Foresight has moved for a stay of the case pending *inter partes* review ("IPR") proceedings before Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO").

Personalis is asserting four patents from two patent families against Foresight's Solid Tumor Recurrence Test, which is a research-use diagnostic test being developed to assess minimum residual disease in patients who have received treatment for solid tumor cancer. The case raises complex scientific issues involving cancer genetics and DNA sequencing. As applied and interpreted by Personalis, the claims of all four patents relate to the same overall diagnostic method: The genetic fingerprint of a patient's tumor is assessed by sequencing the patient's DNA, to identify genetic variants in tumor DNA that are not present in the patient's normal DNA. Then, additional tests are performed at subsequent time points using the information learned from the tumor's genetic fingerprint to track whether the cancer is recurring and the scope of that recurrence. According to Foresight, this diagnostic method was known in the prior art years before the earliest priority date for Personalis' patents, which would make the Personalis patents invalid.

Based on the existence of the prior art, Foresight has petitioned the PTAB to institute IPR with respect to two of the four patents at issue in this case. Another of the patents does not become eligible for an IPR challenge until January 12, 2023. But Foresight has represented to the Court that it would be petitioning for IPR with respect to all of the patents at issue in this case by January 31, 2023, at the latest.

By statute, the PTAB must decide whether to institute IPR proceeding within six months of the filing of the respective petitions.

**Arguments of the Parties**

Based on the request (and anticipated requests) for IPR, Foresight has moved to stay the proceedings in this case. Foresight argues that a stay is likely to simplify issues

2

and streamline discovery and trial. The proceedings here will be streamlined if some or all of Personalis' asserted patent claims are invalidated. And at minimum, Foresight argues, given the scientific complexity of this case and the significant overlap between all four Personalis patents, the USPTO's consideration of Foresight's IPR petitions is likely to result in guidance on issues including the scope or (in)validity of the asserted patents and on the prior art, which will simplify the issues throughout the pendency of the litigation and streamline any trial.

Foresight also argues that this case is at a very early stage. The initial scheduling conference just took place. Neither side has served any discovery and the trial date has not been set (it is likely a year or more away). In Foresight's view, the fact that little has happened so far in the case militates in favor of a stay. The request for a stay is not being used for any tactical advantage.

Foresight also argues that there will be no prejudice to Personalis from a stay because Foresight is not a meaningful competitor to Personalis at this time. Instead, Foresight is an early-stage start-up with 24 full-time employees and is one of more than ten companies attempting to commercialize the technology in issue.

In oral argument, Foresight also emphasized the extreme cost of patent litigation generally and particularly of the discovery process in a patent case. Foresight accurately points out that patent litigation is very expensive and even normal litigation maneuvers, such as formulating, tendering, and responding to discovery can result in crushing legal bills. The IPR process, Foresight argues, was intended by Congress to allow for a less-expensive method of resolving patent disputes. Staying the case pending such review furthers this goal. In Foresight's view, a short stay (six months or

so) to see whether Foresight's requests for IPR will be granted will not unduly prejudice Personalis and may well save money by allowing certain claims to be eliminated if IPR is instituted.

For its part, Personalis' main argument against a stay is that the request is premature. First, Personalis notes that Foresight has not even filed a request for IPR review with respect to two of the patents. And with respect to the already-pending request for IPR review, the USPTO has taken no action on whether to pursue the petition and will likely make no decision on whether to do so for approximately six months. If the USPTO petition is denied in its entirety, then six months of progress on this litigation would be lost with no benefit. Personalis argues that the general rule (especially in other courts that have a larger patent docket than the District of Colorado) is to not grant stays, at least until the USPTO has first weighed in as a threshold matter on whether an IPR should even go forward.

In addition, Personalis also emphasizes that Foresight is a direct competitor in this nascent market and denying Personalis' ability to proceed with the litigation is necessarily unduly prejudicial when it is facing a budding competitor that is making inroads in this new market.

### *Inter Partes* Review ("IPR")

Judge Christine M. Arguello wrote a comprehensive summary of the IPR process in her 2020 order granting a stay pending review in *Cellect LLC v. Samsung Electronics Co., Ltd.,* No. 19-cv-00438-CMA-MEH, 2020 WL 3425166 (D. Colo., June 23, 2020). The following overview borrows liberally from her description of that process:

IPR is an adversarial process created by the Leahy-Smith America Invents Act ("AIA"), 35 U.S.C. § 100 *et seq.* (2011). One of Congress's goals in enacting the AIA was to reduce the burden of litigation on courts. Its purpose in replacing the pre-AIA *inter parties* reexamination procedure with IPR was to "giv[e] the Patent Office significant power to revisit and revise earlier patent grants." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2139–40 (2016) (citing H.R. Rep. No. 112-98, pt. 1, at 45, 48 (2011)). IPR is considered to be at least a partial and, in some situations, a complete alternative to litigation of patent validity issues. The pre-AIA *inter partes* reexamination process did not allow for discovery, expert evidence, oral argument, the application of rules of evidence and procedure, and cross-examination. IPR does allow for such procedures, which further corroborates that Congress intended IPRs to be a substitute for litigation.

IPR is conducted by administrative patent judges within the PTAB of the USPTO, 35 U.S.C. § 6(4)(b), and those judges are "of competent legal knowledge and scientific ability." *Id.* § 6(a). As such, the experts within the USPTO are more likely come to correct decisions regarding the validity of patent claims faster than would be achieved via litigation in district court.

IPR allows any third-party to challenge the validity of issued patents at the PTAB. An IPR petition must be filed within one year of the initiation of litigation alleging infringement of the claims sought to be challenged for validity. Once a petition for IPR is filed, the patent owner can respond within three months, justifying why review of the contested claims should not be instituted. The PTAB typically decides whether to institute IPR by the later of three months of the filing date of the patent owner's

response or the due date for such a filing. The PTAB institutes IPR if "there is a reasonable likelihood that at least one of the claims challenged in the petition is unpatentable." 37 C.F.R. § 42.108(c).

Once IPR is instituted, the USPTO evaluates the contested claims for patentability in light of prior art in the form of patents or printed publications. The petitioner bears the burden of proving, by a preponderance of the evidence, that claims are unpatentable. The patent owner may amend the patent one time by motion to cancel claims or to offer a reasonable number of substitute claims to be considered by the PTAB. Additional motions to amend may be allowed to advance settlement negotiations. The PTAB then renders a final written decision on the patentability of the contested claims within one year from the date an IPR is instituted, although an extension of 6 months for good cause is allowed. Any party not satisfied with the final decision of the PTAB may request a rehearing or appeal the decision to the Federal Circuit. Following a written decision by the PTAB, both the petitioner and any other real party-in-interest are estopped from asserting in a civil action that a claim is invalid on any ground that the petitioner raised or reasonably could have raised during IPR. *See generally Cellect*, 2020 WL 3425166, at *2–3.

An IPR can simplify the litigation by rendering infringement claims moot, estopping the petitioner from asserting any arguments raised in IPR, and providing the court with the PTAB's expert opinion on the claims at issue. *Finjan, Inc v. Symantec Corp.*, 139 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015). Of course, an IPR challenging all asserted claims can dispose of the entire litigation, which is "the ultimate simplification

of issues." *VirtualAgility Inc. v. Salesforce.com Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014).

**Factors to Consider in Deciding whether to Stay Pending IPR**

Courts have the inherent power to stay proceedings to manage their dockets. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Consistent with the objective of allowing resolution of patent-related disputes by the experts at the USPTO outside of formal federal court litigation, courts do stay litigation pending IPR, depending on the circumstances. *See Well Master Corp. v. Flowco Prod. Sols., LLC*, No. 21-cv-02145-CMA-KLM, 2022 WL 4129399 (D. Colo. Sept. 12, 2022) (staying case pending IPR).

The Parties are generally in agreement that in deciding whether to stay a patent infringement suit pending IPR, a district court is to consider the following four factors: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and the court. *Cellect*, 2020 WL 3425166, at *2 (quoting *eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 787 (D. Colo. 2007)); *see also Kamstrup A/S v. Axioma Metering UAB*, No. 19-cv-1669-WMJ-SKC, 2019 WL 6296699, at *2 (D. Colo. Nov. 25, 2019) ("The Court finds that these factors continue to be helpful when considering whether to enter a stay pending IPR proceedings."). These factors should be

considered "in light of the specific procedural posture of the case." *Cellect*, 2020 WL 3425166, at *4; *see also Copy Prot. LLC v. Netflix, Inc.*, C.A. No. 14-365-LPS, 2015 WL 3799363, at *1 (D. Del. June 17, 2015) (listing only three factors to consider: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set") (quoting *Neste Oil OYJ v. Dynamic Fuels, LLC*, 2013 WL 3353984, at *2 (D. Del. July 2, 2013).

**Analysis**

**Prejudice to Personalis—the Non-Moving Party**

In weighing this factor, courts evaluate (1) whether a delay caused by a stay of proceedings unduly prejudices the remedy to which the nonmoving party is entitled; and (2) whether the movant unfairly gains a tactical advantage from any stay granted. *Well Master*, 2022 WL 4129399, at *6.

Courts frequently find that mere delay caused by IPR or reexamination before the PTO is not unduly prejudicial. *See, e.g., Photoflex Prods., Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 WL 1440363, at *2 (N.D. Cal. May 24, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice."); *Micrografx, LLC v. Samsung Telecomm. Am., LLC*, No. 3:13-CV-3599-N, 2014 WL 8239371, at *1 (N.D. Tex. July 9, 2014) ("A delay caused by the *inter partes* review process, without more, does not justify denial of a stay."). IPR provides a more efficient and timely resolution to disputes of patent validity than can be achieved by litigation. It is

questionable whether validity proceedings in district court would proceed any more expeditiously than they would at the USPTO. *Well Master*, 2022 WL 4129399, at *6.

Personalis argues that it will be unduly prejudiced by a stay pending institution of IPR because the two parties are competitors. Personalis' claim of prejudice is based on the fact that Foresight and Personalis are direct competitors in a nascent market for tests that can be used to monitor for recurring cancer by detecting tiny amounts of tumor DNA that are present in the blood of a cancer patient. These tests are being (or can be) used by pharmaceutical companies to validate new therapeutic drugs to address cancer. According to an affidavit submitted by Personalis, Personalis and Foresight are serving the "exact same market segments." (Dkt. #38-1 at 6.) There is evidence that industry groups and marketplace participants frequently compare the Foresight and Personalis assays side-by-side. In Personalis' view, the fact that Foresight may be a small, early-stage start-up, while Personalis is a larger, more established company, is irrelevant.

When two parties are in competition in the marketplace, there is a risk that a patent-holder whose patent is being infringed will be prejudiced in ways that are not easily calculated to render monetary damages. *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1033–34 (C.D. Cal. 2013). "A common complaint among litigating patent-holders is that a stay prevents them from vindicating their patent rights for an extended period of time. This prejudice is heightened when parties to litigation are direct competitors; in such cases, courts presume that a stay will prejudice the non-movant." *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 350–51 (D. Mass. 2011).

9

As far as a tactical advantage for Foresight, the only real advantage Foresight claims is that a stay would minimize the extraordinary expense of federal court litigation while the invalidity (or validity) battle is waged in the presumably less expensive and more expeditious venue of the USPTO. The Court does not find this to be a tactical advantage, but rather one that may well benefit both parties.

Because the Parties here are direct competitors, the Court agrees that this factor weighs against a stay.

### Simplification of the Issues

Personalis argues that it is not certain that staying the case pending IPR institution necessarily will simplify the case. This is because it is not yet clear whether the PTAB will decide to institute the IPR petition(s). *See Dicon Fiberoptics, Inc v. Precisely Microtechnology Corp.*, No. 15-cv-01362-BLF, 2015 WL 12859346, at *2 (N.D. Cal., Octo. 13, 2015) ("[T]he question of whether a stay will simplify and streamline the issues in this litigation depends entirely on whether the PTAB decides to grant the IPR petition.").

If the PTAB declines to institute the requested IPR with respect to all of the claims then time will be lost in this litigation without any corresponding benefit in terms of simplification. Similarly, if IPR is instituted with respect to only certain patents, then other infringement claims on other patents that should be going forward will be delayed.

Personalis has submitted data from the USPTO from fiscal year 2021 involving 726 different patents (considering only IPRs that did not settle). The PTAB denied institution on 379 patents, or in 52% of the cases. Then, taking into consideration the cases where IPR was instituted, the end result was that for 73 percent of all patents,

some or all of the challenged claims were ultimately held patentable and in only 27 percent of the cases was the result that all claims were cancelled. (*See* Dkt. #38 at 8.)

But a closer look at this data suggests that Personlis has cherry-picked the statistics to lead to an arguably misleading conclusion. For example, exclusion of cases that settle from the percentage of cases where IPR is instituted makes little sense. Cases may settle in part because of the institution of IPR, and a settlement would dramatically simplify a case for the court. In fact, based on the data submitted, it appears that for fiscal year 2021, there was a 65 percent institution rate per patent, and a 59 percent institution rate by petition. (*See* Dkt. #39-2 at 9.) Both these data points suggest that it is more probable than not that an IPR will be instituted with respect to at least some aspect of the four patents Foresight seeks to challenge via IPR. If instituted, IPR would likely simplify some of the issues in the case, even if certain of Personalis' claims survive the IPR process. *See Cellect*¸ 2020 WL 4325166, at *4 and n. 9 (explaining that IPR is conducted by a panel of three administrative law judges who are persons of "competent legal knowledge and scientific ability" and even if asserted claims survive IPRs, the court "will gain valuable insight as to the issues underlying claim validity"); *eSoft*, 505 F. Supp. at 787 ("[T]he specialized expertise the PTO can bring to bear on the question whether prior art undermines the validity of the patent's claims would unquestionably help this court resolve Plaintiff's case expeditiously, efficiently, and—most importantly—correctly."). The Court finds that this factor—whether IPR will simplify the issues for the Court—weighs in favor of staying the case, even at this early stage—before IPR has been instituted. *See Kamstrup A/S*, 2019 WL 6296699, at *3 (granting motion to stay pending a decision from the PTAB whether to institute

11

IPR); *Cocona, Inc. v. VF Outdoor, LLC*, No. 16-cv-02703-CMA-MLC, 2018 WL 10910847, at *9 (D. Colo. Mar. 19, 2018) (granting partial stay pending the PTAB's decision whether to institute IPR). If the PTAB denies all the petitions, the litigation would "go forward as normal with only a few months lost." *Kamstrup A/S*, 2019 WL 6296699, at *2. *But see*, *Copy Protection LLC*, 2015 WL 3799363, at *1 (explaining that, generally, the "simplification issue" does "not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for inter partes review").

### Status of Discovery and Date for Trial

On this issue, the Court looks to the question of whether the litigation has progressed significantly enough for a stay to be disfavored. *Dicon Fiberoptics, Inc.*, 2015 WL 12859346, at *1. Foresight is correct that very little has happened in this case. It has not progressed very far (if at all) in discovery and the scheduling order was only recently issued. The trial date is but a distant speck on the figurative horizon. Where a patent case has progressed significantly through discovery and towards trial, a stay pending IPR is not favored. *See Hunter Douglas, Inc. v. Nien Made Enters. Co. LTD.*, No. 13-cv-01412-MSK-MJW, 2014 WL 8807333 (D. Colo., January 14, 2014) (denying stay pending IPR in part because it was likely that all claim construction issues and much of the discovery in the case will have been completed before any ruling in the petition); *Wonderland Switzerland AG v. Britax Child Safety, Inc.*, No. 0:19-cv-02475-JMC, 2020 WL 7075122 (D. S. C., Dec. 2, 2020) (denying stay pending IPR where the parties had already engaged in extensive fact discovery, the court had held a claim construction hearing, and had entered its claim construction order). But where little has

12

happened in the case, and the defendant has moved promptly for a stay after seeking IPR, this factor favors a stay. Such is the case here.

### Conclusion

Considering all the relevant factors, the Court concludes that a stay pending *inter partes* review is merited in this case. The case has not progressed at all. In the event the USPTO does not institute review over any of the patents, then this case can start up again with relatively little delay. The complexity of the patented technology means that the Could would benefit from the expertise of the USPTO if review is instituted. The expense associated with litigating the validity of the patents in federal court, as opposed to the presumptively less expensive process in the USPTO, also counsels in favor of a stay.

This stay is conditioned on Foresight's following through on its representation that it would petition for IPR with respect all the patents at issue in this case by January 31, 2023. A failure to petition for IPR with respect to all the patents at issue in this case would justify lifting of the stay.

Date: January 24, 2023

N. Reid Neureiter
United States Magistrate Judge